# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| ULIOUS BROOKS,<br>    Plaintiff, | Case No. 1:15-cv-812 |
| vs | Black, J.<br>Bowman, M.J. |
| SERGEANT MIKE DILLOW,<br>    Defendant. | **ORDER AND REPORT<br>AND RECOMMENDATION** |

      Plaintiff, an inmate at the Southern Ohio Correctional Facility (SOCF), brings this civil rights action under 42 U.S.C. § 1983 against a SOCF correctional officer. (*See* Doc. 1, Complaint, p. 4, at PAGEID#: 11). By separate Order, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

      In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or

law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a

2

factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

Plaintiff, who is proceeding *pro se*, brings this § 1983 action against "Sergeant Mike Dillow" at SOCF. (*See* Doc. 1, Complaint, p. 4, at PAGEID#: 11). The complaint contains the following factual allegations:

> On 11-24-15 I Ulious Brooks was released from the hole. And as I was leaving out the hole, C-O Spradlin tole me I'll be back in the hole by noon. I arrived to my unit on Unit K-3 cell 78 at about 9:00 A.M. Then at noon Sergeant Dillow came to my cell with handcuffs and shackles and told me I had to go back to the hole. I asked him why. He did not tell me. So I let him cuff me up, then he escorted me off Unit K-3 61 through 80 range. Once on the stairs he tried to threaten me by pointing towards a cam[e]ra on the wall sayin[g] he would have pushed me down the stairs if it wasn't for that cam[e]ra. I blew him off, and turned around to ignor[e] his threats. He then ran up the stairs around me, and got in my face, and called me a "Bitch." I called him a "Bitch" back. Then I told him the only reason why I won't put my hands on him [is] because I know he would set me up! I also told him how tired I was using self control around him because he always disrespects me like I'm a child. He then became very angry then grabbed me by the back of my shirt then forcefully rammed me ag[ai]nst the wall on the 3rd step on K-3 41 through 80 side of the unit. He then began threatening me again. Then he forcefully pushed me and rushed me down the stairs, and for[ce]fully rushed me into the hallway . . . even though I was not resisting or causing him a threat. . . . He then forcefully rammed me ag[ai]nst another wall inside of the hallway, then threatened to slam me on the floor, and beat me up! (I was in handcuffs and shackles the whole time!) He then began forcefully pushing me down the long K-side hallway on into the hole on Unit J-2. He deprived me of my own liberty to walk on my own by pushing me. I did nothing at all to make

> him hate me and do this to me.  He just have a deep personal driven hatred against me because of the type of person I am.
>
> When I went to the hole, R.I.B. convicted me but the warden reversed and overturned my ticket.  While I was in the hole a staff member told me that Sgt. Dillow is going to get me moved to Unit K-1 or K-2 just in case I file a lawsuit he will be able to retaliate eas[i]er.  Once I was let out the hole on 12-7-15 I was moved back to Unit K-3.  The very next day early in the morning Sgt. Dillow personally came to my cell . . . with handcuffs and shackles.  He then made me pack my cell up, then he escorted me to Unit K-1 to cell 76.  He then told me "I put you where I want you.  And if you file any paperwork about what happen I can get you touched over here." . . .  Since I been on Unit K-1 I been getting repeat[ed]ly harassed by these C-Os.  I need imm[e]diate relief, and need to get from over here and back to my cell in Unit K-3, or get out of this institution before something happens.

(*Id.*, pp. 5, 7, at PAGEID#: 12, 14).  Plaintiff claims that the defendant should be held liable for (1) the use of excessive force during the November 24, 2015 incident; (2) discriminating against plaintiff by placing him "in the hole for no reason" and moving him from Unit K-3 to Unit K-1 out of "personal bias"; and (3) harassment of plaintiff when he took plaintiff to the hole and "wrote a false conduct against [him] for no reason" and moved plaintiff to Unit K-1.  (*Id.*, p. 8, at PAGEID#: 15).  As relief, plaintiff requests $80,000 in damages and "to be moved back to Unit K-3 . . . or to be transferred out of SOCF to Toledo Correctional Facility."  (*Id.*, p. 6, at PAGEID#: 13).

At this stage in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes that plaintiff may proceed with a claim for damages against the defendant based on the allegation that the defendant used excessive force against him on November 24, 2015.  *See* 28 U.S.C. § 1915(e)(2)(B).  However, the complaint should be dismissed in all other respects because plaintiff has failed to state an actionable claim under § 1983 based on allegations showing that he was deprived of "a right secured by the United States

4

Constitution or a federal statute." *See Spadafore v. Gardner*, 330 F.3d 849, 852 (6th Cir. 2003).

First, plaintiff's allegations fail to trigger federal constitutional concerns to the extent he seeks to challenge his transfer from Unit K-3 to Unit K-1 by the defendant. Plaintiff has no constitutionally protected right to a particular housing assignment within SOCF or to avoid a transfer to another prison unit. *See, e.g., McKune v. Lile,* 536 U.S. 24, 39 (2002) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Jimenez v. United States,* No. 2:07cv819, 2007 WL 3232469, at *1, *3 (S.D. Ohio Nov. 1, 2007) (and cases cited and quoted therein) (inmates do not "have any constitutionally protected interest in a particular housing assignment or transfer to a particular prison") . *Cf. Harris v. Truesdell,* 79 F. App'x 756, 759 (6th Cir. 2003) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 224) (in affirming the dismissal of the prisoner's due process and Eighth Amendment claims, the Sixth Circuit pointed out that the prisoner had "no constitutional right to be held in a specific security classification"); *Norris v. Schauman*, Civil No. 3:13-0542, 2014 WL 3845165, at *1, *5 (M.D. Tenn. Aug. 5, 2014) ("Prisoners neither enjoy the constitutional right to a specific security classification, nor do they have the constitutional right to be incarcerated at a particular location when the classification and location do not impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'") (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995); citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 576-77 (6th Cir. 2005), *Moody* and *Meachum*).

Plaintiff has alleged that he was moved to Unit K-1 because defendant had indicated that it would be easier to engage in acts of retaliation there in the event that plaintiff filed a

5

lawsuit. A prisoner's claim of retaliation for engaging in protected conduct is grounded in the First Amendment. *Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (en banc)). A retaliation claim has three elements: (1) the prisoner engaged in protected conduct; (2) an adverse action was taken against the prisoner that "'would deter a [prisoner] of ordinary firmness from continuing to engage in that conduct'"; and (3) the prisoner's protected conduct, at least in part, motivated the adverse action. *Id.* (quoting *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007), in turn quoting *Thaddeus-X*, 175 F.3d at 394).

      Here, plaintiff has failed to state an actionable retaliatory transfer claim. "[G]enerally, a transfer . . . 'does not constitute an adverse action since a transfer is merely an ordinary incident of prison life.'" *Jones*, 421 F. App'x at 553 (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005)); *see also Christian v. Michigan Dep't of Corr.,* No. 12-12936, 2013 WL 607783, at *3 (E.D. Mich. Jan. 28, 2013) (Report & Recommendation) (citing *Jones*, *Siggers-El*, and *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003)), *adopted*, 2013 WL 607779 (E.D. Mich. Feb. 19, 2013). An exception has been carved out for cases where "foreseeable, negative consequences 'inextricably follow' from the transfer." *Jones,* 421 F. App'x at 553 (quoting *Siggers-El*, 412 F.3d at 701-02); *see also Christian, supra,* 2013 WL 607783, at *3 (quoting *Jones*, 421 F. App'x at 553) ("The law in this Circuit ... makes it clear that a mere prison transfer without something more—i.e., without 'foreseeable, negative consequences' that are 'inextricably' bound to the transfer—do not constitute a First Amendment violation."). In those "exceptional cases," a question of fact is created as to whether the retaliatory transfer "is sufficiently severe to deter a person of ordinary firmness

6

from exercising his or her [First Amendment] rights." *Jones*, 421 F. App'x at 553 (quoting *Siggers-El,* 412 F.3d at 703-04) (internal citation and quotation marks omitted). Plaintiff has not alleged any facts to suggest that his transfer from Unit K-3 to Unit K-1 fits that exception. Indeed, plaintiff was not deterred by the change in his housing assignment from filing a lawsuit against the defendant. The only allegation that plaintiff has made, which arguably suggests the existence of "negative consequences," is that he has been repeatedly harassed by correctional officers while housed in Unit K-1. The allegation is simply too conclusory to support the inference that the negative consequences he has experienced "inextricably follow[ed] from the transfer" or were "sufficiently severe to deter a person of ordinary firmness from exercising his [First Amendment] rights." Therefore, plaintiff has not stated a viable claim under § 1983 to the extent he challenges his current housing assignment at SOCF. *Cf. Courtney v. Prison Health Services*, No. 10-CV-14123, 2011 WL 3880401, at *4-5 (E.D. Mich. July 21, 2011) (Report & R Recommendation) (holding that plaintiff's retaliatory transfer claim was subject to dismissal for failure to state a claim because the plaintiff had not alleged that "any foreseeable, negative consequences inextricably followed from his transfer, ... as required to meet the exception carved out by *Siggers-El*"), *adopted*, 2011 WL 3880423 (E.D. Mich. Sept. 2, 2011).

Second, plaintiff has not stated a constitutional claim to the extent he has alleged that the defendant wrote a false conduct report which resulted in the disciplinary sanction that was imposed by the Rules Infraction Board (RIB) on November 25, 2015. (*See* Doc. 1, pp. 8, 13-14, 16, at PAGEID#: 15, 20-21, 23). Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right. *See, e.g., Reeves*

7

*v. Mohr*, No. 4:11cv2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (and cases cited therein) (holding that the prisoner failed to state a claim upon which relief may be granted to the extent that he claimed he had "a constitutional right to be free from false accusations"); *see also Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (per curiam) (and cases cited therein) ("False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are adjudicated in a fair hearing."). "A constitutional violation may occur, if as a result of an accusation, the Plaintiff was deprived of a liberty interest without due process." *Reeves, supra*, 2012 WL 275166, at *2 (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995)). Here, however, plaintiff's allegations are insufficient to trigger constitutional concerns because he has not alleged any facts even remotely suggesting that the challenged disciplinary action, which was ultimately reversed by SOCF's warden, deprived him of a protected liberty interest.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that the Fourteenth Amendment confers on prisoners only a "limited" liberty interest "to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or which "will inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 484, 487; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Williams v. Wilkinson,* 51 F. App'x 553, 556 (6th Cir. 2002). The Sixth Circuit has held that confinement in segregation generally does not rise to the level of an "atypical and significant" hardship implicating a liberty interest except in "extreme circumstances, such as when the prisoner's complaint alleged that he is subject to an *indefinite* administrative segregation" or that such confinement was excessively long in duration. *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)) (emphasis in

8

original); *see also Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir.) (holding that the prisoner's 8-year confinement in segregation was of "atypical duration" and thus "created a liberty interest that triggered his right to due process"), *cert. denied*, 133 S.Ct. 429 (2012). *Cf. Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (ruling that an inmate's transfer to Ohio's "supermax" prison "imposes an atypical and significant hardship" given the combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates).

 Here, plaintiff has not alleged that the challenged disciplinary proceeding resulted in the lengthening of his prison sentence, the withdrawal of good-time credits, or the deprivation of any necessities of life. Moreover, plaintiff has not alleged any facts to suggest that he was subjected to a lengthy disciplinary placement amounting to an atypical or significant hardship that would trigger constitutional concerns. Indeed, it appears from the record submitted by plaintiff as an attachment to the complaint that plaintiff only spent a week in disciplinary confinement. Specifically, on December 2, 2015, SOCF's warden reversed the sanction and ordered plaintiff's "release from DC" on the ground that plaintiff's "signature is missing from the conduct report." (*See* Doc. 1, Complaint, pp. 16-17, at PAGEID#: 23-24). Accordingly, because plaintiff does not have a protected liberty interest under the circumstances alleged herein, any claim against the defendant for his conduct in the disciplinary proceedings fails to state a cognizable federal claim under the Fourteenth Amendment's Due Process Clause.

 Third, plaintiff's allegations are insufficient to state an actionable claim of discrimination under the Fourteenth Amendment's Equal Protection Clause. To state an equal protection claim, the plaintiff must allege "discrimination by government which either burdens a fundamental

9

right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *Bloodworth v. Timmerman-Cooper*, No. 2:10cv1121, 2012 WL 161232, at *2 (S.D. Ohio Jan. 19, 2012) (Report & Recommendation) (quoting *TriHealth, Inc. v. Bd. Of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005)), *adopted*, 2012 WL 469841 (S.D. Ohio Feb. 13, 2012). As discussed above, neither plaintiff's transfer to Unit K-1 nor the challenged disciplinary sanction he received implicates constitutional concerns. Moreover, plaintiff has not alleged sufficient facts to suggest that any fundamental right was implicated by the defendant's challenged actions or that plaintiff was targeted based on his membership in a suspect class. Plaintiff's general assertions that the defendant hates him are simply too conclusory to support the inference that the defendant intentionally treated him differently than others similarly situated or that plaintiff was subjected to a disparate treatment that was not rationally related to a legitimate governmental interest.[1] *Cf. Jackson,* 158 F. App'x at 663 ("Bare allegations of malice do not suffice to establish a constitutional claim.") (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)); *Cheatham v. Muse*, 617 F. App'x 252, 254-55 (4th Cir. 2015) (per curiam) (rejecting equal protection claim in case where the plaintiff "[a]t most" contended that the defendant "found him ineligible for parole based on some unexplained personal dislike or vendetta"); *Vasquez v. Shartle*, No. 4:10cv2511, 2011 WL 1004934, at *6 (N.D. Ohio Mar. 18, 2011) (holding that the prisoner's comparison of "his treatment to that imposed upon other prisoners who are 'disliked'" was "not sufficient" to establish an equal protection claim); *see also Clark v. Johnston,* 413 F. App'x 804, 817-18 (6th

---

[1] The undersigned rejects any contention by plaintiff that the warden's reversal of the sanction imposed in the disciplinary proceedings initiated by defendant indicates that the defendant's actions against the plaintiff were not rationally related to a legitimate governmental interest. No such inference can be drawn given that is clear from plaintiff's attachments to the complaint that the reversal was not based on any finding regarding the legitimacy or credibility of the allegations contained in the defendant's conduct report, but rather was based solely on a procedural ground—i.e., the absence of plaintiff's signature on the report. (*See* Doc. 1, Complaint, p. 17, at PAGEID#: 24).

Cir. 2011) (holding that the prisoner had not adequately pleaded an "equal-protection violation under a 'class of one' theory" based on the general allegation that certain prison policies were "selectively" enforced against him); *Bloodworth, supra*, 2012 WL 161232, at *2-3 (and cases cited therein in support of the conclusion that dismissal of the prisoner's "class of one" equal protection claims was "appropriate" because the plaintiff's "broad, nonspecific statements regarding large groups of inmates" who allegedly did not receive the same treatment as the plaintiff were "insufficient to satisfy the pleading requirement"); *Johnson v. Crews*, No. 3:11CV-P213-M, 2011 WL 2119264, at *2-3 (W.D. Ky. May 26, 2011) (citing *Kamppi v. Ghee*, No. 99-3459, 2000 WL 303018, at *1 (6th Cir. Mar. 14, 2000)) (dismissing the prisoner's discrimination claim at the screening stage because his "mere recitation that he has been discriminated against is not enough" to state a cause of action). Therefore, to the extent that plaintiff seeks to bring a claim of discrimination against the defendant for conduct that led to plaintiff's disciplinary confinement for a week and plaintiff's transfer from Unit K-3 to Unit K-1 at SOCF, the complaint's allegations are insufficient to implicate constitutional concerns under the Fourteenth Amendment.

Finally, plaintiff has failed to state a claim upon which relief may be granted by this Court to the extent he seeks to bring a cause of action sounding in "harassment" against the defendant stemming from the disciplinary proceedings, the change in plaintiff's housing assignment or any alleged verbal altercations between plaintiff and the defendant. It is well-settled that allegations of verbal abuse and harassment do not rise to the level of "a constitutional violation and are insufficient to support a section 1983 claim for relief." *See Wingo v. Tennessee Dep't of Corr.,* 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)); *see also Chilcott v. Erie Cnty. Domestic Relations*, 283 F. App'x

11

8, 11 (3rd Cir. 2008) (and Sixth, Fifth and Tenth Circuit cases cited therein). *Cf. Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545-46 (6th Cir. 2004) (affirming dismissal of § 1983 complaint against a correctional officer for failure to state a claim even though the complaint contained the following allegations amounting to "shameful and utterly unprofessional behavior" by the correctional officer: the correctional officer continuously banged and kicked plaintiff's cell door, threw the plaintiff's food trays so hard that the top of the tray would fly off, made aggravating and insulting remarks to plaintiff, growled and snarled at plaintiff, smeared the plaintiff's window to prevent him from seeing out of it, behaved in a "racially prejudicial manner" toward the plaintiff and "intentionally harasse[d]" plaintiff "in an attempt to cause him to suffer a heart attack, stroke or nervous breakdown").

Accordingly, in sum, the undersigned concludes plaintiff may proceed only with his claim for damages against the defendant based on allegations that the defendant used excessive force against plaintiff on November 24, 2015. All other claims alleged by plaintiff in his complaint are subject to dismissal on the ground that plaintiff has failed to state a claim upon which relief may be granted.

**IT IS THEREFORE RECOMMENDED THAT:**

The following causes of action alleged in the plaintiff's complaint be **DISMISSED** on the ground that plaintiff has failed to state a claim upon which relief may be granted by this Court: any claim of harassment based on alleged verbal altercations between the plaintiff and defendant; and any claims, including plaintiff's specific claims of discrimination and harassment, challenging (1) plaintiff's transfer from Unit K-3 to Unit K-1 at SOCF and (2) the disciplinary proceedings that resulted in the sanction imposed by the RIB on November 25, 2015 and reversed by SOCF's warden on December 2, 2015.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff may proceed with the following cause of action against the defendant: claim for damages based on allegations that the defendant used excessive force against plaintiff on November 24, 2015.

2. The United States Marshal shall serve a copy of the complaint, summons, the separate Order issued this date granting the plaintiff *in forma pauperis* status, and this Order and Report and Recommendation upon the defendant, "Sergeant Mike Dillow," as directed by plaintiff, with costs of service to be advanced by the United States.

3. Plaintiff shall serve upon defendant or, if appearance has been entered by counsel, upon defendant's attorney, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendant or defendant's counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

4. Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

                                                    *s/Stephanie K. Bowman*
                                                    Stephanie K. Bowman
                                                    United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ULIOUS BROOKS,                     Case No. 1:15-cv-812
    Plaintiff,

                                         Black, J.
    vs                                 Bowman, M.J.

SERGEANT MIKE DILLOW,
    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc